**WHISPELL FOREIGN CARS, INC., et al., Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**No. 09–315 L.**

United States Court of Federal Claims.

June 5, 2012.

---

Mark F. Hearne, II, Clayton, MO, for plaintiffs. Lindsay S.C. Brinton and Meghan S. Largent, Washington, DC, of counsel.

Carol L. Draper, with whom was Ignacia S. Moreno, Assistant Attorney General, Environment & Natural Resources Division, Natural Resources Section, United States Department of Justice, Washington, DC, for defendant.

## OPINION

HEWITT, Chief Judge.

### I. Background

This is a rails-to-trails case brought by Whispell Foreign Cars, Inc., et al. (plaintiffs). "Plaintiffs claim that the government effected a taking of their property when it converted a railroad right of way to a trail pursuant to the National Trails System Act Amendments of 1983 (the Trails Act Amendments), Pub.L. No. 98–11, 97 Stat. 42, to the National Trails System Act (Trails Act), Pub.L. No. 90–543, 82 Stat. 919 (1968) (codified as amended at 16 U.S.C. § 1241 (2006))." *Whispell Foreign Cars, Inc. v. United States (Whispell)*, 100 Fed.Cl. 529, 531 (2011). The court previously resolved the claims of several plaintiffs.[1] With respect to the claim of Mr. Lawrence C. Alton, the court previously held that an ordinance passed by the city of

---

1. The court's previous opinions in this matter provide more detail on the facts of this case and the resolution of various plaintiffs' claims. *See* *generally Whispell Foreign Cars, Inc. v. United States*, 100 Fed.Cl. 529 (2011); *Whispell Foreign Cars, Inc. v. United States*, 97 Fed.Cl. 324 (2011).

St. Petersburg, Florida in 1914 (Ordinance 429)—which the parties stipulated is the conveyance at issue for the right of way across Mr. Alton's property, *see* Second Joint Stipulation, Docket Number (Dkt. No.) 89, at 3—conveyed an easement and not title in fee simple from the city of St. Petersburg to the Tampa & Gulf Coast Railroad Co. (individually and/or collectively with its successors, as the context requires, Tampa & Gulf Coast), *Whispell,* 100 Fed.Cl. at 540, and that the scope of the easement granted to Tampa & Gulf Coast did not encompass use as a recreational trail, *id.* at 541.[2]

On January 3, 2012 the court ordered plaintiffs to "file additional documentation . . . to support Mr. Alton's claim of fee simple title to the property underlying the easement granted to the railroad by Ordinance 429." Order of Jan. 3, 2012, Dkt. No. 131, at 2. With respect to Ordinance 429, the court noted that plaintiffs had stated in their briefing that

> [t]he city did not own the land under the streets. The fee estate in the land under the streets was owned by the adjoining owners. The [c]ity held an easement to use the property for a street and granted the Railroad a railroad easement across their existing street-easement.

*Id.* at 1 (second alteration in original) (quoting Pls.' Mem. of Law in Support of Mot. for Partial Summ. J., Dkt. No. 31, at 4 n.20). However, plaintiffs provided no citation "to any document in the record" that would support their contention that Mr. Alton did, in fact, own title in fee simple to the land underlying the railroad easement. *Id.* Defendant was provided an opportunity to respond, and plaintiffs were provided an opportunity to reply. *Id.* at 2.

Before the court are Plaintiffs' Response to this Court's Order of January 3, 2012 (Dkt. [No.] 131) (Pls.' Br.), Dkt. No. 136, filed February 15, 2012; the United States' Memorandum in Response to Plaintiffs' Supplemental Briefing on the Lawrence C. Alton Property (Def.'s Resp.), Dkt. No. 145, filed

April 16, 2012; and Plaintiffs' Reply in Support of their Supplemental Brief Filed February 15, 2012 (Dkt. [No.] 136) Re: Alton's Chain of Title Confirming His Fee Ownership to the City Street Centerline (Pls.' Reply), Dkt. No. 146, filed April 23, 2012.

## II. Legal Standards

 "[O]nly persons with a valid property interest at the time of the taking are entitled to compensation." *Wyatt v. United States,* 271 F.3d 1090, 1096 (Fed.Cir.2001). "Because real property rights arise from state law, the extent of the plaintiffs' property interests in the right-of-way depend on the law of the state in which the property is located." *Macy Elevator, Inc. v. United States,* 97 Fed.Cl. 708, 718 (2011) (citing *Stop the Beach Renourishment, Inc. v. Fla. Dep't of Envtl. Prot.,* —— U.S. ——, 130 S.Ct. 2592, 2597, 177 L.Ed.2d 184 (2010)); *see also Whispell,* 100 Fed.Cl. at 537 ("Whether an individual has a compensable private property interest is determined by state law." (citing *Bd. of Regents of State Colls. v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972))).

 Under Florida law:

> Where the owner of land has it surveyed, mapped, and platted, showing subdivisions thereof, with spaces for intervening streets or other highways between the subdivisions clearly indicated upon the map or plat, and conveyances in fee of the subdivisions are made with reference to such map or plat, the owner thereby evinces an intention to dedicate an easement in the streets or other highways to the public use as such, *the title to the land under the street remaining in the owner or his grantees;* and, where such conveyances are made with reference to the map or plat, the dedication of the easement for street purposes cannot be subsequently revoked as against the grantees, and *the title of the grantees of subdivisions abutting on such streets, in the absence of a contrary*

---

**2.** In addition to the question of Mr. Lawrence C. Alton's title to the land underlying the railroad easement addressed in this Opinion, the court must also determine the proper measure of just compensation owed to Mr. Alton. Briefing by the parties on cross-motions for summary judgment on the issue of just compensation was stayed pending the court's resolution of the title issue. *See* Order of Jan. 5, 2012, Docket Number (Dkt. No.) 133, at 1–2.

*showing, extends to the center of such highway, subject to the public easement.* And, where the highway is lawfully surrendered, the then holder of the title to abutting property and to the center of the street has the property relieved of the public easement.

*Smith v. Horn,* 70 Fla. 484, 70 So. 435, 436 (1915) (emphasis added); *see also Winter v. Payne,* 33 Fla. 470, 15 So. 211, 213 (1894) ("Where the owner of a tract of land makes a town plat of it, with spaces indicating the dedication of roads or streets, and conveys lots with reference to, and bounded by, said roads or streets, he thereby dedicates them to public use. . . ."); *Porter v. Carpenter,* 39 Fla. 14, 21 So. 788, 789 (1897) (citing *Winter* for the same proposition); *Florida S. Ry. Co. v. Brown,* 23 Fla. 104, 1 So. 512, 513 (1887) (finding that "where a street or highway is the boundary of a lot or piece of land, . . . the owner of such land owns the soil to the center of such street or highway, subject to the right of the public to pass and repass over and along it," and that "when no street or highway is specifically mentioned in the conveyance, but the land is described by words or figures, and abuts on a street, . . . the same rule prevails"); *Burns v. McDaniel,* 104 Fla. 526, 140 So. 314, 316 (1932) ("[I]n the absence of evidence to the contrary, [an] abutting lot owner is presumed to own the same to the center of the street."). As provided in a Florida treatise:

In the absence of a statute providing for the acquisition of the fee or a deed from the owner expressly conveying the fee, the public, in obtaining property for use as a highway, acquires merely an easement of passage and the abutting property owner is presumed to own the soil to the center of the road subject to the easement in favor of the public. In such cases, the owner of land over which a highway passes retains the fee and all rights of property not incompatible with the public easement or right of passage common to all citizens.

28A Fla. Jur.2d *Highways, Streets, and Bridges* § 106 (2012); *cf.* Fla. Stat. § 177.085(1) (2011) ("When any owner of land subdivides the land and dedicates streets . . . on the map or plat, and the dedication contains a provision that the reversionary interest in the street . . . is reserved unto the dedicator or his or her heirs . . . and thereafter conveys abutting lots or tracts, the conveyance shall carry the reversionary interest in the abutting street to the centerline or other appropriate boundary, unless the owner clearly provides otherwise in the conveyance.").

### III. Discussion

Plaintiffs attached to their opening brief in response to the court's Order of January 3, 2012 "a complete Chain–of–Title Report [for] Mr. Alton's property [3] prepared by Stewart Title Guaranty Company in Tampa, Florida." Pls.' Br. 2 (footnote added).[4] Plaintiffs state

---

**3.** Upon reviewing the copies of the documents provided, the court found many of them to be illegible. *See* Order of Feb. 23, 2012, Dkt. No. 139, at 1 (noting that "[p]ortions of the Exhibit are illegible"). On February 23, 2012 the court ordered plaintiffs to "file legible copies of those portions of Exhibit A that are not legible . . . on or before Thursday, March 22, 2012." *Id.* On March 22, 2012 plaintiffs filed a notice stating that "[i]n compliance with this Court's order, Plaintiffs contacted Stewart Title Company and asked their personnel to make efforts to obtain more legible copies of the documents referenced in this Court's February 23, 2012, Order." Pls.' Notice of Compliance in Resp. to this Court's Order of Feb. 23, 2012, Dkt. No. 142, at 2. Plaintiffs state that "[a]fter diligent efforts, Stewart Title Company was unable to procure any better copies of the documents." *Id.*

The documents are not sufficiently clear to verify plaintiffs' statement that "[t]here is no conveyance in this chain of title to Pinellas Coun-

ty or any other government entity," Pls.' Resp. to This Court's Order of Jan. 3, 2012 (Dkt. [No.] 131) (Pls.' Br. or Plaintiffs' Brief), Dkt. No. 136, at 2; however, because the court can resolve the matter on the basis of Florida case law, *see infra* Part III; *cf. infra* note 7 (concluding that because defendant provides no evidence to rebut the Florida law presumption that the public acquires only an easement in a city street, it is appropriate to conclude that the land underlying the street was not previously conveyed to the city in fee simple), the court determines that it is not essential that legible documents be produced in order to resolve the question of Mr. Alton's claim of title.

**4.** Plaintiffs' Brief consists of five unnumbered pages and two attached exhibits (Exhibits A and B) which provide the chain of title information. *See generally* Pls.' Br. For ease of reference, the court treats the five pages of the body of the brief as though they were numbered pages 1–5. Be-

that all the conveyances are "between private individuals, families, or entities. There is no conveyance in this chain of title to Pinellas County or any other government entity." *Id.* Plaintiffs state that there is only one deed in the chain of title report that mentions public roads or highways: a deed "dated March 19, 1911 ... between David W. Meeker and Jaime R. Meeker (the Meekers), to H. Walter [F]uller and Zophar L. Howell" (the Meeker to Howell deed). *Id.* According to plaintiffs, the Meeker to Howell deed provides that the land conveyed "is subject to the existing 100–f[oo]t wide right-of-way of the Orange Belt Railway," *id.* at 3, and is also

> subject ... to all public roads or highways dedicated by [the Meekers] as shown by plats of record in the office of the Clerk of the Circuit Court of said County, and also as provided for in deed from [the Meekers] to W.A. Holshouser [ (the Meeker to Holshouser deed) ], dated November 3, 1906, recorded in deed book # 73, page 147 in the office of said Clerk[,]

*id.* (internal quotation marks omitted); *accord* Pls.' Ex. A at 12. The Meeker to Holshouser deed appears to grant from the Meekers to William A. Holshouser a tract of land abutting the land conveyed in the Meeker to Howell deed. *See* Pls.' Ex. B at 1. The Meeker to Holshouser deed states that the land was conveyed "[e]xcepting a strip of land twenty five feet wide along the Westerly side of said ten acres which is reserved as the one half of a Street." *Id.*

The parties appear to agree that: (1) Mr. Alton's property was part of Fuller's Subdivision, Def.'s Resp. 2–3, Pls.' Reply 3; (2) Second Avenue was platted as part of Fuller's Subdivision and abuts Mr. Alton's property, Def.'s Resp. 3, Pls.' Reply 3, 3 n.2; and (3) Second Avenue is the street on which the former rail corridor was located, Def.'s Resp.

3, Pls.' Reply 3, 3 n.3. Plaintiffs and defendant agree that Mr. Alton's property and Second Avenue were platted as part of Fuller's Subdivision and the court is aware of no basis for concluding otherwise.

According to plaintiffs, the absence of a "single conveyance to the City of St. Petersburg or Pinellas County ... conveying any interest in the land under the public roads," Pls.' Br. 3, shows that "the public roads are simply another easement burdening the property" and, therefore, that Mr. Alton owns to the centerline of the land subject to the railway easement, *see id.* at 4–5 (citing *Smith v. Seaboard Air Line Ry. Co.*, 215 F.2d 365, 366 (5th Cir.1954) ("Prima facie the appellant, who is the abutting owner, has the fee to the middle of the street, subject to the easement in favor of the public....")).

Defendant responds that "[u]nder Florida law, recording the [plat of Fuller's Subdivision in which Mr. Alton's property is located (Fuller plat) ] and selling lots referencing the plat constituted an offer to dedicate the platted streets for public use." Def.'s Resp. 3. According to defendant, a 1926 aerial map of the city of St. Petersburg (which shows a street adjacent to the Alton property), *see* Def.'s Ex. A;[5] *cf.* Straup Decl. 1 (noting that Mr. Alton's property abutted Second Avenue in a 1926 aerial photograph)—in connection with the Fuller plat, subsequent maps and the Florida rule that states that platted streets are deemed dedicated to public use— all "evidence[ ] the City's interest in the land underlying the street." *Id.*

While defendant does acknowledge the Florida rule that, when a platted street is dedicated to the public, the abutting lot owner remains the owner of the land underlying the street to the center line, *see id.* at 5 (citing *Smith*, 70 So. at 436), defendant nevertheless contends that "the City had a property interest in a street abutting the Alton

cause the attached Exhibits are not independently paginated, when citing to the Exhibits, the court refers to the numbers assigned to the pages of the Exhibits by the CM/ECF electronic filing system.

5. Defendant attached five documents to its Response. United States' Mem. in Resp. to Pls.' Supplemental Briefing on the Lawrence C. Alton Property (Def.'s Resp.), Dkt. No. 145. The first

document is a declaration by Cindi Straup, director of Axxion Administration, LLC, which the court will refer to in citations as the "Straup Declaration." The remaining four documents are exhibits to the Straup Declaration and will be referred to by the court as defendant's Exhibits A through D. *See* Def.'s Exs., Dkt. Nos. 145-2 through 145-5.

property and retained that interest through June 2004," *id.* at 7, because the city did not "waive or vacate its property interest" by granting an easement over the street to the railroad by the Ordinance 429, *id.* at 6. However, defendant does not specify what type of property interest—an easement or fee simple title, for example—it believes the city owns in the land underlying the railroad easement. *See generally id.*

Plaintiffs reply that "[a]s a matter of Florida law, Alton owned fee title to the land under the street abutting his platted lots," Pls.' Reply 2, and that because Mr. Alton—and not the city—owned fee title to the land underlying the street, "[t]he government's arguments about the City not waiving a property interest are irrelevant," *id.* at 4.

Many of the legible deeds in Mr. Alton's chain of title, including one legible deed from as early as 1921, describe the Alton property as "Lots Seven (7) and Eight (8) Block Twenty One (21) of Fuller's Subdivision, according to the plat thereof on file in the office of the Clerk of the Circuit Court County of Pinellas State of Florida plat book 1, page 16." *See* Pls.' Ex. A at 38; *accord, e.g., id.* at 5, 10, 24–26. According to defendant, Fuller's Subdi-

vision is "shown on a plat recorded in or about 1912." Def.'s Resp. 2–3.[6]

■ In these circumstances, Florida law dictates that fee title to the land under the street remains in the owner or the owner's grantees:

> Where the owner of land has it surveyed, mapped, and platted, showing subdivisions thereof, with spaces for intervening streets or other highways between the subdivisions clearly indicated upon the map or plat, and conveyances in fee of the subdivisions are made with reference to such map or plat, the owner thereby evinces an intention to dedicate an easement in the streets or other highways to the public use as such, the title to the land under the street remaining in the owner or his grantees.

*Smith,* 70 So. at 436. Here, when Fuller's Subdivision was platted, the owner "evince[d] an intention" to grant easements to the city of St. Petersburg over the platted streets. Absent an express statement to the contrary in subsequent conveyances of properties forming part of Fuller's Subdivision, the abutting owners (including Mr. Alton) remain the owners in fee simple to the centerline of the land under the street.[7] *See id.; Burns,* 140 So. at 316.

6. At least one street abutting the Alton property apparently pre-dates the plat of Fuller's Subdivision (Fuller plat). A deed from 1906 conveying the Alton property from David and Jennie Meeker to William A. Holshouser (Meeker to Holshouser deed) excepts from the conveyance "a strip of land twenty feet wide along the Westerly side of said ten acres which is reserved as the one half of a Street." *See* Pls.' Ex. B at 1. Moreover, a deed dated March 19, 1911 (Meeker to Howell deed) references a "right of way, one hundred (100) [feet] in width; granted to the Orange Belt Railway," Pls.' Ex. A at 11, and references "public roads or highways … as shown by plats of record," *id.* at 12. The reference to roads and highways "shown by plats of record" in the Meeker to Howell deed dated 1911 indicates that, although the Fuller plat may have been filed in 1912, at least one plat that included Mr. Alton's property predated the March 19, 1911 deed.

7. Many of the deeds that predate the 1912 Fuller plat are illegible, and at least one street that abuts the Alton property predates the Fuller plat. *See supra* note 6. It is therefore theoretically possible that one of these deeds granted fee simple interest to the city in the roadway. However,

plaintiffs represent that "[t]here is no conveyance in [Mr. Alton's] chain of title to Pinellas County or any other government entity," Pls.' Br. 2, and defendant does not contend otherwise, *see* Def.'s Resp. *passim.*

Under the default rule of Florida property law, public entities in the state ordinarily obtain only easements in public streets. See 28A Fla. Jur.2d *Highways, Streets, and Bridges* § 106 (2012) (noting that "[i]n the absence of a statute providing for the acquisition of the fee or a deed from the owner expressly conveying the fee, the public, in obtaining property for use as a highway, acquires merely an easement of passage"). Defendant provides no evidence to rebut the presumption under Florida law that the public acquires only an easement in a city street. In these circumstances, it is appropriate to conclude that no previous conveyances of the land underlying the street to the city change the result of the default plat rule.

This conclusion is further supported by the language of the few legible deeds that date prior to the 1912 Fuller plat. The 1906 deed states that the land is conveyed "[e]xcepting a strip of land twenty five feet wide along the Westerly side of said ten acres which is reserved as the one half of a Street." Pls.' Ex. B at 1. The wording

Mr. Alton's predecessor in interest was therefore the fee simple owner of the land underlying the City's street easement in 1914 when the City granted an easement to Tampa & Gulf Coast. *See* St. Petersburg, Fla., Ordinance 429 (Apr. 16, 1914)[8]; *Whispell,* 100 Fed.Cl. at 541 (holding that Ordinance 429 granted an easement to Tampa & Gulf Coast). Mr. Alton's predecessors in interest also held fee title to the centerline of the land underlying the railway easement for the easement's duration, and Mr. Alton was the owner in fee simple of the land under the railroad easement at the time of the taking.

As explained in *Rogers v. United States,* "Because [the railroad] obtained an easement in the [relevant] conveyance, successors to the ... grantees [of the easement] retained fee title [under Florida law] to the underlying land encumbered by the easement." 90 Fed.Cl. 418, 431 (2009) (citing *Smith,* 70 So. at 436). Mr. Alton, therefore, is a plaintiff entitled to just compensation pursuant to the court's August 2011 decision. *See Whispell,* 100 Fed.Cl. at 541 (concluding that "Ordinance 429 granted an easement limited to constructing, maintaining, and operating railway tracks, and the government effected a taking of plaintiffs' property by imposing a new easement for public recreational trail use on their property" (emphasis omitted) (citation and internal quotation marks omitted)).

## IV. Conclusion

Mr. Alton was the owner in fee simple of the property to the centerline of the land underlying the railway easement at the time of the taking and is entitled to just compensation therfor.

IT IS SO ORDERED.

---

of the 1911 Meeker to Howell deed indicates that the twenty-five feet reserved for "one half of a Street" in the 1906 Meeker to Holshouser deed referred to an easement, stating that the grantee took the land *"subject ... to* all public roads or highways dedicated by the [Meekers] as shown by plats of record ... and also as provided for in the [1906 Meeker to Holshouser deed]." Pls.' Ex. A at 12 (emphasis added).

8. A copy of Ordinance 429 was attached to the court's Order of June 27, 2011, Dkt. No. 85, at 2.