**WHISPELL FOREIGN CARS, INC., et al., Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

No. 09–315 L.

United States Court of Federal Claims.

Aug. 22, 2012.

Mark F. Hearne, II, Clayton, MO, for plaintiffs. Lindsay S.C. Brinton and Meghan S. Largent, Washington, DC and Debra J. Albin–Riley and Joseph L. Cavinato, III, Los Angeles, CA, of counsel.

Carol L. Draper, Trial Attorney, with whom was Ignacia S. Moreno, Assistant Attorney General, Environment & Natural Resources Division, Natural Resources Section, United States Department of Justice, Washington, DC, for defendant.

## OPINION

HEWITT, Chief Judge.

### I. Introduction

This is a rails-to-trails case brought by Whispell Foreign Cars, Inc., et al. (plaintiffs). Plaintiffs claim that the government effected a taking of their property when it converted a railroad right of way to a trail pursuant to the National Trails System Act Amendments of 1983 (the Trails Act Amendments), Pub. L. No. 98–11, 97 Stat. 42, to the National Trails System Act (Trails Act), Pub. L. No. 90–543, 82 Stat. 919 (1968) (codified as amended at 16 U.S.C. § 1241 (2006)). *Whispell Foreign Cars, Inc. v. United States (Whispell II)*, 100 Fed.Cl. 529, 531 (2011). The court previously resolved the liability claims of several plaintiffs. *See Whispell Foreign Cars, Inc. v. United States (Whispell I)*, 97 Fed.Cl. 324 (2011); *Whispell II*, 100 Fed.Cl. 529. This opinion addresses damages with respect to one of the three claims remaining to be resolved: that of Lawrence C. Alton. With respect to Mr. Alton's claim, the court previously held that Tampa & Gulf Coast Railroad Co. (individually and/or collectively with its successors, as the context requires, *Tampa & Gulf Coast*) held an easement across Mr. Alton's property and that the easement did not encompass use as a recreational trail.

*See Whispell II*, 100 Fed.Cl. at 540–41. The court has also recently held that Mr. Alton was the owner of the land underlying the railroad easement at the time of the taking and is therefore entitled to just compensation. *See Whispell Foreign Cars, Inc. v. United States (Whispell III)*, 105 Fed.Cl. 596, 601–02 (2012). The parties now disagree as to the measure of just compensation owed to Mr. Alton for the taking of his property.

Before the court are the United States' Motion for Partial Summary Judgment with Respect to the Alton Property and Memorandum in Support [1] (defendant's Motion or Def.'s Mot.), Docket Number (Dkt. No.) 105, filed October 26, 2011; the United States' Proposed Findings of Uncontroverted Fact in Support of Motion for Partial Summary Judgment with Respect to the Alton Property, Dkt. No. 106, filed October 26, 2011; Plaintiffs' Evidentiary Objection to and Motion to Strike the Declaration of Barbara League Filed with the Government's Motion for Partial Summary Judgment on the Lawrence C. Alton Claim (plaintiffs' Motion to Strike or Pls.' Strike Mot.), Dkt. No. 114, filed November 14, 2011; Plaintiffs' Responses and Objections to Defendant's Proposed Findings of Uncontroverted Fact, Dkt. No. 115, filed November 14, 2011; Plaintiff[s'] Cross–Motion for Partial Summary Judgment on the Appraisal Standard for Valuing the Property Taken from Lawrence C. Alton and Memorandum of Law in Support of Partial Summary Judgment and in Response to the Government's Motion [2] (plaintiffs' Cross–Motion or Pls.' Cross–Mot.), Dkt. No. 116, filed November 14, 2011; Plaintiffs' Proposed Findings of Uncontroverted Fact in Support of Its Cross–Motion for Partial Summary

---

1. Unless otherwise noted, the court's citations to the United States' Motion for Partial Summary Judgment with Respect to the Alton Property and Memorandum in Support (defendant's Motion or Def.'s Mot.), Docket Number (Dkt. No.) 105, will refer to the page numbers of defendant's Memorandum in Support of defendant's Motion, which is attached to defendant's Motion and is contained in the same document. *See generally* Def.'s Mot.

2. Unless otherwise noted, the court's citations to Plaintiff[s'] Cross–Motion for Partial Summary Judgment on the Appraisal Standard for Valuing the Property Taken from Lawrence C. Alton and Memorandum of Law in Support of Partial Summary Judgment and in Response to the Government's Motion (plaintiffs' Cross–Motion or Pls.' Cross–Mot.), Dkt. No. 116, will refer to the body of plaintiffs' Cross–Motion as paginated and not to the two un-numbered pages that precede the Table of Contents. *See generally* Pls.' Cross–Mot.

Judgment on the Lawrence C. Alton Claim, Dkt. No. 117, filed November 14, 2011; the United States' Reply in Support of Motion for Partial Summary Judgment on the Alton Property and Opposition to Plaintiffs' Cross–Motion and Motion to Strike the Declaration of Barbara League (Def.'s Reply), Dkt. No. 158, filed June 29, 2012; and Plaintiffs' Combined Reply in Support of Their Cross–Motion for Partial Summary Judgment on the Claim of Lawrence C. Alton and Plaintiffs' Reply in Support of Their Motion to Strike the Declaration of Barbara League, Dkt. No. 160, filed July 11, 2012.

## II. Background

### A. The Trails Act Amendments

In order to address the national problem of declining use of rail tracks and resulting removal of tracks, Congress enacted the Trails Act Amendments. *See Preseault v. Interstate Commerce Comm'n (Preseault I),* 494 U.S. 1, 5, 110 S.Ct. 914, 108 L.Ed.2d 1 (1990). The Trails Act Amendments authorized the Interstate Commerce Commission[3] to "railbank" or preserve railroad rights of way not currently in use for rail service for possible future use by converting unused rights of way to recreational trails. *Id.* at 6, 110 S.Ct. 914; *see* 16 U.S.C. § 1241.

■ The Trails Act is subject to the Fifth Amendment Takings Clause and, when the government takes private property pursuant to the Trails Act, the government must provide just compensation. *See Preseault I,* 494 U.S. at 13, 16, 110 S.Ct. 914; *Caldwell v. United States,* 391 F.3d 1226, 1228–29 (Fed. Cir.2004). However, "only some rail-to-trail conversions will amount to takings," *Preseault I,* 494 U.S. at 16, 110 S.Ct. 914, and only those individuals "with a valid property interest at the time of the taking are entitled to compensation," *Wyatt v. United States,* 271 F.3d 1090, 1096 (Fed.Cir.2001); *see Cienega Gardens v. United States,* 331 F.3d 1319, 1328 (Fed.Cir.2003) ("For any Fifth Amendment takings claim, the complaining

party must show it owned a distinct property interest at the time it was allegedly taken.. . .").

■ In a rails-to-trails takings case, a "taking occurs when, pursuant to the Trails Act, state law reversionary interests are effectively eliminated in connection with a conversion of a railroad right-of-way to trail use." *Caldwell,* 391 F.3d at 1228. "The issuance of the [Notice of Interim Trail Use (NITU)] is the only government action in the railbanking process that operates to prevent abandonment of the corridor and to preclude the vesting of state law reversionary interests in the right-of-way." *Id.* at 1233–34 (emphasis omitted); *Ladd v. United States,* 630 F.3d 1015, 1020 (Fed.Cir.2010).

### B. Procedural History

In February 2011 the court issued an opinion (February 2011 Opinion) on the parties' first cross-motions for summary judgment regarding the interests conveyed to Tampa & Gulf Coast by four conveyances—the Hayward, Ainsworth, Gilbart and Pancoast Conveyances (the Four Conveyances) executed in the early 1900s. *See generally Whispell I,* 97 Fed.Cl. 324. The court held that the Four Conveyances granted fee simple title to Tampa & Gulf Coast and, accordingly, granted summary judgment for the government with regard to the claims of those plaintiffs whose property interests, according to plaintiffs' filings, were based on the Four Conveyances. *Id.* at 326–27, 345.

Plaintiffs subsequently moved the court to reconsider its February 2011 grant of summary judgment with respect to certain plaintiffs' claims, contending that, in their previously filed sur-reply, they had changed their position regarding which conveyances were relevant to the court's decision on plaintiffs' claims. *Whispell II,* 100 Fed.Cl. at 535. Defendant, responding to plaintiffs' motion for reconsideration, also changed its position with respect to which conveyances the court was required to interpret in order to decide

---

**3.** The Transportation Act of 1920, 41 Stat. 456, 477–78, gave the Interstate Commerce Commission (ICC) jurisdiction over railroad abandonments. *RLTD Ry. Corp. v. Surface Transp. Bd.,* 166 F.3d 808, 810 (6th Cir.1999). "Pursuant to the ICC Termination Act of 1995, 109 Stat. 803, the ICC ceased to exist. Authority over abandonment applications is now held by the [Surface Transportation Board (STB) ]." *Id.; see* 49 U.S.C. § 10903 (2006).

plaintiffs' claims. *Id.* The court ordered the parties to stipulate as to the conveyances relevant to each plaintiff's claim. *Id.* In its Opinion on plaintiffs' motion for reconsideration, the court concluded that most of the claims dismissed by the court in its February 2011 Opinion remained unaffected by the parties' subsequent stipulation and briefing. *Id.* at 535–36.

However, with respect to the Alton claim, the court granted plaintiffs' motion for partial summary judgment, *id.* at 548, holding that the conveyance made by the city of St. Petersburg, Florida to Tampa & Gulf Coast pursuant to a city ordinance (Ordinance 429) conveyed an easement and not fee simple title to the railroad, *see id.* at 539–40.[4] The court also held that the scope of the easement granted by Ordinance 429 did not encompass use of the easement as a public recreational trail. *See id.* at 541. The court deferred consideration "of whether the easement had been abandoned by Tampa & Gulf Coast ... and the relevance of abandonment to the damages stage of this litigation," *id.* at 541 n. 14, and ordered briefing on the claims of plaintiffs remaining in the litigation, including Mr. Alton, *see* Order of Sept. 1, 2011, Dkt. No. 101. On January 3, 2012 the court requested supplemental briefing and documentation on the question of whether Mr. Alton was the fee simple owner of the property underlying the railroad easement. *See* Order of Jan. 3, 2012, Dkt. No. 131, at 2. After reviewing the briefing and documentation submitted by the parties, the court concluded that Mr. Alton was the owner in fee simple to the centerline of the land underlying the railroad easement at the time of the taking, and therefore is entitled to just compensation. *See Whispell III*, 105 Fed.Cl. at 601–02. Briefing on the parties' cross-motions for summary judgment with respect to the valuation of Mr. Alton's property concluded on July 11, 2012.

III. Legal Standards

A. Summary Judgment Standard of Review

The parties have cross-moved for summary judgment pursuant to Rule 56 of the Rules of the United States Court of Federal Claims (RCFC). Pls.' Cross–Mot. 1[5]; *see* Def.'s Reply 1. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a). The moving party has the burden of showing "the absence of any genuine issue of material fact and entitlement to judgment as a matter of law." *Crater Corp. v. Lucent Techs., Inc.*, 255 F.3d 1361, 1366 (Fed.Cir.2001) (citing *Celotex Corp. v. Catrett (Celotex)*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The nonmoving party then bears the burden of establishing, by a showing of specific facts, that there are genuine issues of material fact for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. A fact is material if it might significantly affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the

---

4. The court declined to grant either party's motion for partial summary judgment with respect to the claims of Jesse and Virginia T. Abrams and Bama Sea Products, Inc. (Bama Sea). *Whispell II*, 100 Fed.Cl. at 548. The parties stipulated that neither Ordinance 429 nor any recorded conveyance is relevant to these plaintiffs' claims, with the result that "the court must look to the law of adverse possession and prescriptive easement to determine the interest acquired by Tampa & Gulf Coast [Railroad Co. (individually and/or collectively with its successors, as the context requires, Tampa & Gulf Coast)] in the segment of the right of way located across" the Abrams' and Bama Sea's land. *Id.* at 541. In considering whether Tampa & Gulf Coast obtained fee simple title by adverse possession, the court concluded that "[n]either party has set

forth sufficient evidence on the issue of adverse possession." *Id.* at 546. Consequently, the court ordered additional briefing with respect to the claims of the Abrams and Bama Sea. *See* Order of Sept. 1, 2011, Dkt. No. 101 (establishing a briefing schedule for the parties' motions for partial summary judgment with respect to the Alton, Abrams and Bama Sea claims). The court will consider the submissions of the parties on the Abrams and Bama Sea claims in a subsequent opinion.

5. In this citation, the court refers to the unnumbered page of plaintiffs' Cross–Motion appearing next after the cover page. *See* Pls.' Cross–Mot.; *supra* n. 2.

nonmoving party." *Id.* In considering a motion for summary judgment, the court draws all inferences in favor of the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Mann v. United States,* 334 F.3d 1048, 1050 (Fed.Cir. 2003) (citing *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505).

When parties cross-move for summary judgment, "the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Mingus Constructors, Inc. v. United States,* 812 F.2d 1387, 1391 (Fed.Cir.1987).

## IV. Discussion

### A. Plaintiffs Need Not Prove that Tampa & Gulf Coast Abandoned the Railroad Right-of-Way Under Florida Law; Plaintiffs Are Entitled to a "Before Taken" Valuation of Their Land Unencumbered by Any Easement

The parties agree, *see* Def.'s Mot. 2; Pls.' Cross–Mot. 3, that the proper measure of just compensation in the case of a partial taking is "the difference in the fair market value of the property before and after the taking." *Rogers v. United States,* 101 Fed. Cl. 287, 292 (2011) (citing *United States v. Miller,* 317 U.S. 369, 376, 63 S.Ct. 276, 87 L.Ed. 336 (1943)); *see also Washington Metro. Area Transit Auth. v. United States,* 54 Fed.Cl. 20, 28 (2002) ("[T]he basic yardstick for calculating severance damage is the 'before and after rule,' *i.e.,* the difference between the value of the property before and after the taking."). The parties' disagreement centers on how to value plaintiffs' properties in the "before" condition.

Defendant requests the court to enter partial summary judgment that the proper valuation of Mr. Alton's property in its "before" condition must take into account the railroad

easement that existed at the time the NITU was issued. *See* Def.'s Mot. i.[6] Defendant argues that, because Tampa & Gulf Coast did not abandon its easement before the issuance of the NITU, Mr. Alton's property was encumbered by a railroad easement on the date of the taking. *Id.* at i-ii. Defendant argues that the proper calculation of just compensation for any taking of Mr. Alton's property must consider the railroad encumbrance "in valuing the Alton property in the 'before condition.' " *Id.* at ii. Defendant would have the court award to plaintiffs the difference between the value of Mr. Alton's land subject to a railway easement and the value of Mr. Alton's land subject to a recreational trail easement. *See id.* at 11.

Plaintiffs cross-move for summary judgment, claiming that the just compensation owed to Mr. Alton is " 'the difference between the fair market value of an estate held in fee simple and the fair market value of the same estate burdened with the current Trails Act easement.' " Pls.' Cross–Mot. 7 (quoting *Rogers,* 101 Fed.Cl. at 296). In plaintiffs' view, the court need not inquire whether the railroad abandoned the easement because the court has already held that: (1) the railroad acquired only an easement over the property in question; and (2) the terms of the easement did not include further use as a public recreational trail. *See id.* at 1, 10–16; *cf. Whispell II,* 100 Fed.Cl. at 538–41 (discussing Ordinance 429 and holding that the Ordinance conveyed an easement to the railroad that did not encompass use as a recreational trail). Plaintiffs contend that the Trails Act Amendments were enacted precisely to prevent a state law termination of a railroad right-of-way by abandonment that would otherwise occur absent the issuance of an NITU. Pls.' Cross–Mot. 22. According to plaintiffs, the issuance of an NITU "destroys and effectively eliminates the landowners' right to unencumbered title and possession of their land" by preventing the reversion[7] to

---

**6.** In this citation and the two following citations, the court refers to defendant's two-page motion which immediately precedes its memorandum in Docket Number 105. *See supra* n. 1.

**7.** The United States Court of Appeals for the Federal Circuit has "note[d] in passing that as a

matter of traditional property law terminology, a termination of the easements would not cause anything to 'revert' to the landowner. Rather, the burden of the easement would simply be extinguished, and the landowner's property would be held free and clear of any such bur-

the landowner that would occur if state law abandonment had not been prevented. *Id.* (internal quotation marks omitted).

The resolution of the parties' dispute depends on the interpretation of the Trails Act and the Trails Act Amendments. In *Caldwell v. United States,* the United States Court of Appeals for the Federal Circuit (Federal Circuit) explained the operation of the Trails Act, in particular, that the legislation prevents the abandonment of easements originally created to provide railroad rights-of-way:

> The Trails Act, through a process known as "railbanking," provides an alternative to abandoning a railroad right-of-way under sections 10903 and 10502 [of title 49 of the United States Code]. Section 8(d) of the Trails Act allows a railroad to negotiate with a state, municipality, or private group (the "trail operator") to assume financial and managerial responsibility for operating the railroad right-of-way as a recreational trail. If the railroad and the trail operator indicate willingness to negotiate a trail use agreement, the [Surface Transportation Board (STB) ] stays the abandonment process and issues a notice allowing the railroad right-of-way to be "railbanked." The effect of the notice, if the railroad and prospective trail operator reach an agreement, is that the STB retains jurisdiction for possible future railroad use *and the abandonment of the corridor is blocked "even though the conditions for abandonment are otherwise met."* [*Nat'l Ass'n of Reversionary Prop. Owners v. STB,* 158 F.3d 135, 139 (D.C.Cir.1998); *see also Preseault I,* 494 U.S. at 8, 110 S.Ct. 914]. Specifically, section 8(d) provides that "such interim use [for trails] shall not be treated, for purposes of any law or rule of law, as an abandonment of the use of such rights-of-way for railroad purposes." Thus, section 8(d) of the Trails Act prevents the operation of state laws that would otherwise come into effect upon abandonment—property laws that would "result in extinguishment of easements for railroad purposes and reversion of rights of way to abutting landowners."

den." *Toews v. United States,* 376 F.3d 1371,

*Caldwell,* 391 F.3d at 1229 (emphasis added) (some internal citations and a footnote omitted) (last alteration in original).

■ Accordingly, the blocking of any reversion that would otherwise result under state law constitutes a taking. "The taking, if any, when a railroad right-of-way is converted to interim trail use under the Trails Act occurs when state law reversionary property interests that would otherwise vest in the adjacent landowners are blocked from so vesting." *Id.* at 1233 (citing *Preseault v. United States (Preseault II),* 100 F.3d 1525, 1552 (Fed.Cir.1996) (en banc) and *Toews v. United States,* 376 F.3d 1371, 1376 (Fed.Cir. 2004)); *see also Barclay v. United States,* 443 F.3d 1368, 1373 (Fed.Cir.2006) (stating same). As the Federal Circuit stated in *Ladd,* "the NITU forestalls or forecloses the landowners' right to *unencumbered* possession of the property." *Ladd,* 630 F.3d at 1025 (emphasis added).

The legislative history of the Trails Act Amendments underpins the Federal Circuit's understanding of the operation of the Trails Act and the Trails Act Amendments. In particular, the Trails Act was viewed by legislators as an incomplete effort to establish trails over former rail corridors because the Trails Act itself did not contain a mechanism that could prevent abandonment from occurring. *See* H.R. Rep. No. 98–28, at 8–9 (1983), *reprinted in* 1983 U.S.C.C.A.N. 112, 118–20. In the House Report accompanying the 1983 Trails Act Amendments, Congress explained that the Trails Act Amendments were necessary in order to prevent the operation of state laws that would result in abandonment. *Id.* According to the House Report, the addition of Section 8(d) of the Trails Act

> reflects the concern that previous congressional efforts have not been successful in establishing a process through which railroad rights-of-way which are not immediately necessary for active service can be utilized for trail purposes. . . .

> [This provision] should eliminate many of the problems with this program. The concept of attempting to establish trails only after the formal abandonment of a railroad

1376 (Fed.Cir.2004).

right-of-way is self-defeating; once a right-of-way is abandoned for railroad purposes there may be nothing left for trail use. *Id.*

In this case, defendant contends that Mr. Alton must prove that abandonment occurred in order to recover as just compensation the difference between the value of his land in fee simple and the value of his land subject to a perpetual trail easement. *See* Def.'s Mot. 4 ("[T]o obtain compensation for losses based on the theory that no railroad easement existed on the date of valuation, Plaintiff must prove that the railroad abandoned its easement over the Alton property under Florida law on or before June 18, 2004."). The Trails Act Amendments, however, were designed to prevent the precise occurrence that defendant states that Mr. Alton must prove in order to recover just compensation for the full value of his reversionary interest. Under the Trails Act Amendments, the issuance of the NITU prevents any abandonment that would otherwise have occurred under state law, providing instead that the regulatory action of converting the railway to a trail subject to railbanking "shall not be treated, for purposes of any law or rule of law, as an abandonment of the use of such rights-of-way for railroad purposes." 16 U.S.C. § 1247(d); *see City of Ford v. United States*, 106 Fed.Cl. 136, 140 (2012) (noting that, because "the STB has 'exclusive and plenary jurisdiction' to regulate railroad abandonments and the disposition of reversionary interests[,] ... federal, not state, law controls when abandonment occurs" (citation omitted) (quoting *Barclay v. United States*, 443 F.3d 1368, 1374 (Fed.Cir.2006))). Because the Trails Act Amendments block reversion, the Trails Act, as amended, results in a taking of a plaintiff's reversionary interest. Defendant's suggestion that Mr. Alton must prove state law abandonment in order to recover the difference between the fair

market value of his property in fee simple absolute—what Mr. Alton would have acquired or had the possibility of acquiring upon abandonment—and the fair market value of his property subject to a perpetual trail easement is inconsistent with the operation of the Trails Act.

Nor is it appropriate for the court to consider abandonment at the damages stage of the litigation. Federal Circuit precedent directs the court to consider abandonment only during the liability phase, and then only under limited circumstances, in particular, under part three of a three-part inquiry:

> (1) who owned the strips of land involved, specifically did the Railroad ... acquire only easements, or did it obtain fee simple estates; (2) if the Railroad acquired only easements, were the terms of the easements limited to use for railroad purposes, or did they include future use as public recreational trails; and (3) *even if* the grants of the Railroad's easements were broad enough to encompass recreational trails, had these easements terminated prior to the alleged taking so that the property owners at that time held fee simples unencumbered by the easements.

*Preseault II*, 100 F.3d at 1533 (emphasis added).

■ Importantly, subsequent cases decided by both the Federal Circuit and the United States Court of Federal Claims have interpreted *Preseault II* to mean that a court does not proceed to the third prong of the inquiry—abandonment—if the court concludes that the scope of the easement was not broad enough to encompass the use of the property as a recreational trail.[8] *See Ellamae Phillips Co. v. United States*, 564 F.3d 1367, 1373 (Fed.Cir.2009) ("We conclude that [*Hash v. United States*, 403 F.3d 1308 (Fed.Cir.2005)] does not preclude the trial court from deciding either the scope of the

---

8. Of course, the fact that the court need not consider abandonment unless the scope of the easement encompasses trail use does not mean that state law abandonment did not occur. The issuance of the Notice of Interim Trail Use (NITU) under the Trails Act is not to be treated as abandonment under state law and effectively cuts off state law abandonment. *Caldwell v. United States*, 391 F.3d 1226, 1229 (Fed.Cir.

2004). At the time when the NITU is issued, however, depending on the railroad's actions and the relevant state law on abandonment, the easement may already have been abandoned. In that case, it is clear that what was taken was the plaintiff's interest in his unencumbered land and the valuation question at issue in this case does not arise.

easement granted under the 1875 Act or, *if the scope was broader than railroad use,* whether in this case the easement was abandoned." (emphasis added)); *Toews,* 376 F.3d at 1381 ("In the circumstances, it is unnecessary for us definitively to address the question of whether there had been an earlier abandonment of the easement...."); *Thompson v. United States,* 101 Fed.Cl. 416, 434 (2011) ("Since the court has determined that Michigan law does not authorize public recreational trail use of railroad easements, the court need not proceed to the third step of *Preseault II.*"); *Rogers v. United States,* 90 Fed.Cl. 418, 432 (2009) ("Because it is clear that the ... easement did not encompass recreational trails, this Court need not reach the third prong of the *Preseault II* analysis—i.e., whether, even if the grants of the railroad's easements were broad enough to encompass recreational trails, these easements had terminated prior to the alleged taking."). For purposes of liability, therefore, the court need consider whether the railway easement was abandoned if—and only if—it determines that the scope of the railroad's easement encompassed use as a recreational trail.

In Mr. Alton's case, the court held that Ordinance 429 conveyed an easement and not fee simple title to Tampa & Gulf Coast. *See Whispell II,* 100 Fed.Cl. at 539–40. The court also held that the scope of the easement granted by Ordinance 429 did not encompass use of the easement as a public recreational trail. *See id.* at 540–41. Because the first two prongs of *Preseault II* are met, the court has found a compensable taking under the Federal Circuit's three-part test—a test that does not require a plaintiff to prove either that the railway easement was abandoned or that the easement would have been abandoned.

Under the Federal Circuit's test, once the first two *Preseault II* prongs are met, liability is established, and it is presumed that a plaintiff's reversionary interest is taken. The *Preseault II* test does not require any showing that the railway easement would actually have terminated or that the reversion would actually have occurred. By cutting off the possibility of abandonment (and

any accompanying reversion), *see Caldwell,* 391 F.3d at 1229, and determining that the issuance of the NITU before abandonment occurs constitutes a taking, *see Ladd,* 630 F.3d at 1023, the Trails Act Amendments and subsequent case law treat property subject to the NITU as abandoned but for the operation of the Trails Act and the Trails Act Amendments. This framework presumes a plaintiff's right to a reversion once the *Preseault II* two-prong test for liability is met, thereby assuming what defendant argues that plaintiffs must prove: that the railway easement was abandoned or would have been abandoned as a matter of state law. *See* Def.'s Mot. 4 (suggesting that Mr. Alton "must prove that the railroad abandoned its easement ... under Florida law" before the issuance of the NITU in order for Mr. Alton's land to be valued as unencumbered in the "before" condition).

Because it was determined in the liability phase that the railroad obtained only an easement over Mr. Alton's land, and that the easement did not encompass use as a recreational trail, *see Whispell II,* 100 Fed.Cl. at 539–41, there is no basis for the court, in the damages phase, to ignore the presumption of Mr. Alton's right to reversion of a fee simple estate afforded to him in the liability phase. Mr. Alton need not, as defendant suggests, *see* Def.'s Mot. 4, prove abandonment before obtaining recovery for the value of its reversionary interest. Mr. Alton is entitled to just compensation equal to what the statute presumes has been taken from him: his interest in his property unencumbered by any easement. *See Raulerson v. United States,* 99 Fed.Cl. 9, 12 (2011) ("[T]he extent of the taking depends not on plaintiffs' property interests at the time of the NITU, but rather 'upon the nature of the state-created property interest that [plaintiffs] *would have enjoyed* absent the federal action and upon the extent that the federal action burdened that interest.'" (quoting *Preseault I,* 494 U.S. at 24, 110 S.Ct. 914)).

Accordingly, just compensation in this context is compensation for the reversionary interest that was taken—that is, the difference between the value of Mr. Alton's property in fee simple, unencumbered by a rail-

way easement, and the value of his property subject to the perpetual trail/railbanking easement imposed by operation of the Trails Act and the Trails Act Amendments.

This conclusion is consistent with many other determinations by this court on the question of whether abandonment impacts the valuation of plaintiffs' property in the "before" condition. For instance, in *Macy Elevator v. United States,* the court stated:

> [T]o the extent that the government characterizes the "before" condition as measured by the condition of plaintiffs' properties immediately prior to the issuance of the NITU, this characterization is inconsistent with the nature of a "taking" under the Trails Act. By operation of law, the Trails Act blocks plaintiffs' state law reversionary interests when the NITU is issued and the taking occurs. What was "taken" from plaintiffs were these reversionary interests. If state law defines these reversionary interests as a right to unencumbered land, and if these interests would have been triggered absent the issuance of the NITU, then the "before" condition of plaintiffs' properties should be those properties unencumbered by any easement.

105 Fed.Cl. 195, 198 (2012); *see also Howard v. United States,* 106 Fed.Cl. 343, 369 (2012) ("The proper measure of damages is ... the difference between the value of plaintiffs' property unencumbered by the railroad easement and the value of plaintiffs' property encumbered by a trail use easement subject to possible reactivation as a railroad easement."); *Anna F. Nordhus Family Trust v. United States,* 106 Fed.Cl. 289, 292 (2012) ("The Government's argument—that Plaintiffs must show that abandonment occurred *before* issuance of the NITU—runs contrary to the operation of the Trails Act. One of the principal purposes of the Amendments to the Trails Act is to ensure that abandonment, when contemplated by a railroad, does not in fact occur."); *Ybanez v. United States,* 102 Fed.Cl. 82, 87 (2011) ("Even if Union Pacific had not abandoned the easement prior to the issuance of the NITU, the interest taken from plaintiffs would have been unencumbered land. The determination of what was taken from plaintiffs turns not on the status of the land at the time of the NITU but what interest plaintiffs would have had in the absence of the NITU."); *Rogers,* 101 Fed.Cl. at 293–94 ("Defendant's insistence that Plaintiffs prove common-law abandonment to demonstrate the 'before' condition of their property is contrary to the operation of the Trails Act."); *Raulerson,* 99 Fed.Cl. at 11–12 (noting that, by conveying the easement to an entity that would construct a recreational trail, the railroad "would have abandoned its right to the easement under state law, causing the property to revert back to plaintiffs in fee simple" and that "[b]ecause the Trails Act expressly prevents such reversion, plaintiffs have been subject to a taking that must be measured by reference to the fee simple value of their properties"); *Biery v. United States,* 99 Fed.Cl. 565, 579–80 (2011) (finding that, under Kansas state law, the railway would have been abandoned but for the issuance of the NITU, and that plaintiffs were thereby "deprived of the unencumbered fee they would otherwise have enjoyed"); *Capreal, Inc. v. United States,* 99 Fed.Cl. 133, 146 (2011) (finding that "the NITU prevented the railroad from carrying out its intention [to abandon the railway] and blocked the reversion to the fee simple landowners"). *But see Carolina Plating Works, Inc. v. United States,* 102 Fed.Cl. 555, 561 n. 5, 562 n. 6 (2011) (declining to decide the valuation issue on summary judgment, but noting that "[i]t is arguable that had plaintiffs' property not been allegedly taken, it would have remained subject to the railway easements for some term of years, if not indefinitely. Seemingly, plaintiffs should not be permitted to take advantage of events that would not have occurred but for the takings," and suggesting that a plaintiff's property should not always be treated as being unencumbered in the before condition). Consistent with many other opinions on the subject, it is the court's view that the Trails Act, as amended, does not require that Mr. Alton prove abandonment in order for his property to be valued in the "before" condition as unencumbered at the time of the taking.

Because the court has determined that it has no reason to consider abandonment, the court also has no reason to consider the declaration of Barbara League (League Dec-

laration), Director of Network and Joint Facility services for CSX Transportation, Inc. (successor to Tampa & Gulf Coast). *See* Def.'s Mot. Ex. A (League Decl.); *Whispell I*, 97 Fed.Cl. at 329 (stating that CSX Transportation, Inc. is Tampa & Gulf Coast's successor). Defendant proffered the League Declaration in an attempt to show that the railroad lacked intent to abandon the property, *see* Def.'s Mot. 8–9, and plaintiffs moved to strike the League Declaration, arguing that Ms. League lacks foundation and personal knowledge and that the declaration is both irrelevant and speculative, *see generally* Pls.' Strike Mot. Because the court finds that the question of whether the railway easement was abandoned is irrelevant to the calculation of the just compensation owed to Mr. Alton, the League Declaration is also irrelevant and is unnecessary to the court's consideration of the parties' cross-motions for summary judgment. Plaintiffs' Motion to Strike is therefore MOOT.

## V. Conclusion

In accordance with the foregoing, the court GRANTS plaintiffs' Cross–Motion and DENIES defendant's Motion with respect to the claim of Lawrence C. Alton.

The parties shall, on or before Wednesday, September 5, 2012, propose further proceedings necessary to resolve the issue of just compensation to be paid to plaintiff Lawrence C. Alton.

IT IS SO ORDERED.